IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRENT JASON MORIN, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:20-CV-00293-DGK |
| ANDREW SAUL,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Brent Jason Morin's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of degenerative joint disease, degenerative disc disease, history of stroke, headaches, asthma, and right eye retina disorder, and non-severe impairments of anxiety and sleep apnea. He also found that although Plaintiff does not retain the residual functional capacity ("RFC") to perform past work as a warehouse laborer and tractor trailer driver, he can perform other jobs found in significant numbers in the national economy.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his application for benefits on September 7, 2017, alleging a disability-onset date of April 7, 2016.[1]  The Commissioner denied the application at the initial claim level, and Plaintiff filed a written request for hearing.  The ALJ held a hearing on January 7, 2019, and, on February 12, 2019, issued a decision finding Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on February 26, 2020, leaving the ALJ's decision as the Commissioner's final decision.  As Plaintiff has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors.  *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016).  Substantial evidence is less than a preponderance but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Id.*  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Wright v. Colvin, 789 F.3d 847, 852* (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close").  The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome.  *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

---

[1] Plaintiff initially alleged a disability onset date of December 31, 2012, but amended his alleged onset date at the ALJ hearing.  R. at 16, ECF No. 7-3.

2

## Discussion

The Commissioner follows a five-step evaluation process[2] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at step four by crafting an RFC unsupported by substantial evidence, and then at step five by relying on this flawed RFC to determine he was capable of performing other jobs in the national economy.

In determining Plaintiff's RFC, the ALJ determined that Plaintiff's medically determinable impairments—severe impairments of degenerative joint disease, degenerative disc disease, history of stroke, headaches, asthma, and right eye retina disorder; and non-severe impairments of anxiety disorder and sleep apnea—could reasonably be expected to cause some of his alleged symptoms. R. at 23, ECF No. 7-3. But the alleged intensity, persistence, and limiting effect of Plaintiff's symptoms was not consistent with the relevant medical and opinion evidence. *Id.* The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567 (b), with the following additional limitations:

> [H]e can lift or carry 20 pounds occasionally and ten pounds frequently. He can stand or walk for 6 hours in an 8-hour workday. He can sit for six hours in an eight-hour workday. He can push or pull in the limits for lifting and carrying. He can occasionally climb ramps and stairs. He cannot climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to temperature extremes, vibration, and hazards such as

---

[2] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) [her] impairments, alone or combined, are medically severe; (3) [her] severe impairments meet or medically equal a listed impairment; (4) [her] residual functional capacity precludes [her] past relevant work; and (5) [her] residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 416.920(a)–(g). Through step four of the analysis the claimant bears the burden of showing she is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

3

working around dangerous machinery or at unprotected heights. He can work at moderate noise levels. He should avoid concentrated exposure to inhaled pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation.

R. at 21. Based upon the RFC, the ALJ found that Plaintiff was not capable of performing past relevant work as a warehouse laborer and tractor trailer driver. R. at 27. The ALJ then found that Plaintiff retained the residual functional capacity to perform other occupations in the national economy and that these occupations exist in significant numbers. R. at 28. Representative work includes router-clerical work, and work as a photocopy-machine operator and as a marker. R. at 27.

### I. The RFC is supported by substantial evidence.

Plaintiff makes multiple arguments that the RFC is not supported by substantial evidence. Each argument is addressed below.

Plaintiff argues that the RFC is unsupported because the ALJ failed to consider that Plaintiff's bouts of severe headaches would cause him to be off-task at work or miss work entirely. Pl. Br. 21–22, ECF No. 9. However, the ALJ considered Plaintiff's allegation that he suffered from up to five migraines per month, ultimately concluding that Plaintiff's headaches were less limiting than he had alleged, and that the RFC sufficiently accounted for this limitation. R. at 21, 22, 25.

Substantial evidence supports this conclusion. Plaintiff reported to Dr. David L. Ewing, M.D., on April 11, 2016, that his headaches had gotten better, that most of his headaches occurred on the weekends, and that they were only about a four on a ten-point pain scale. R. at 566. Plaintiff noted that Verelan and Topamax were beneficial, and that Plaintiff was a lot happier than he had been before taking the prescriptions. *Id.* Additionally, Plaintiff stated he did not feel that his headaches were a major problem, and that he rarely used Midrin to combat bad headaches. R. at

4

567. Dr. Ewing noted, based on Plaintiff's headache diary, that Plaintiff's headaches were occurring less often. *Id.* In December 2016, Plaintiff reported that his headaches were at a 2 or 4 on a ten-point pain scale. R. at 767, 791. In early 2018, Plaintiff reported that his headaches were helped by medication and that they were a 4 to 6 on a ten-point pain scale. R. at 1002. During 2017 and 2018, Plaintiff reported as many as nine headaches per month, and as few as zero. R. at 784, 791, 1002, 1010. On April 16 and August 20, 2018, Plaintiff reported that Topiramate reduced the severity and frequency of his headaches. R. at 1002, 1010. Since it is well established that "impairments that are controllable or amenable to treatment do not support a finding of total disability," the ALJ did not err in finding Plaintiff's headaches were less disabling than alleged. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

Plaintiff next argues the ALJ was wrong to consider Plaintiff's part-time work as a driver for Woody's Auto Sales. The ALJ held this part-time employment was inconsistent with Plaintiff's allegations of disability. R. at 23. Plaintiff argues this punishes him for attempting to make ends meet. Pl. Br. 22–23. However, the ALJ is required to evaluate a claimant's daily activities to determine the intensity, severity, and limiting effects of the claimant's impairments. 20 C.F.R. § 404.1529. The ALJ may therefore consider a claimant's part-time work. *See Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009).

Plaintiff also contends that the ALJ failed to factor in the limiting effects of Plaintiff's anxiety disorder, a non-severe impairment, when formulating the RFC. Pl. Br. at 7–8 (quoting SSR 96-8P, 1996 WL 374184 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'")). However, the ALJ did consider Plaintiff's anxiety disorder in formulating the RFC. R. at 20 ("Although the undersigned finds a couple of medically determinable impairments to be

5

nonsevere [sic], these impairments and the severe impairments are considered in determining the residual functional capacity set forth below."). The ALJ ultimately concluded that the RFC sufficiently accounted for this limitation. R. at 22.

Substantial evidence supports this conclusion. Dr. Ewing noted on April 28, 2017, that Plaintiff quit taking Celexa. R. at 635. Dr. Goddard advised Plaintiff to resume taking the medication and also to see a psychiatrist. *Id.* At Plaintiff's next visit with Dr. Ewing on June 30, 2017, he still had not seen a psychiatrist. R. at 640. During the ALJ hearing on January 7, 2019, Plaintiff was unable to remember when he'd last gone to see a medical health professional, but testified that it had been "quite awhile ago." R. at 204. "While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Further, Plaintiff's anxiety improved after he began taking Celexa. R. at 590, 640. In addition, Plaintiff's self-reported daily activities show that he retains the mental capacity to drive, leave his home alone, shop for groceries in store and by telephone, use a checkbook or money order, use a computer, handle a savings account, handle cash, pay bills, visit with family and friends, play cards, watch movies, and go out to eat. R. at 405–09.

Similarly unpersuasive is Plaintiff's argument that the RFC is flawed because the opinions of state agency medical consultant Denise R. Trowbridge, M.D., and state agency psychological consultant James Morgan, Ph.D., which the ALJ partly relied on to formulate the RFC, do not constitute substantial evidence. Pl. Br. 20–21, 24.

As an initial matter, the Court notes that Plaintiff misstates the standard applicable to social security cases. The ALJ's opinion, and by extension the ALJ's RFC determination, must be supported by substantial evidence on the record as a whole. *Lauer v. Apfel*, 245 F.3d 700, 706 (8th Cir. 2001); *see also Igo*, 839 F.3d at 728. This does not mean that each piece of evidence must

6

itself constitute substantial evidence to support the ALJ's opinion. When the whole record is considered, pieces of evidence which would not alone constitute substantial evidence may be considered together. If, when considered together, the evidence in the record reaches the threshold of substantial evidence, i.e., that "a reasonable mind would find it sufficient" to support the ALJ's decision, the Court must uphold the decision. 839 F.3d at 728.

In the present case, substantial evidence on the record as a whole supports the ALJ's RFC determination. For example, regarding the intensity, persistence, and limiting effect of Plaintiff's degenerative joint disorder, arthritis in his left knee,[3] an MRI taken on March 29, 2015 showed only mild to moderate degenerative joint disease.[4] R. at 523. Exams taken between March and June of 2015 showed that Plaintiff had a normal gait. R. at 523, 526, 527, 529, 553. Likewise, an exam on September 12, 2017 showed that Plaintiff had a normal gait and normal knee alignment, required no assistive devices, had no mechanical symptoms and no pain when extending his knee. R. at 688. An exam on February 27, 2018, reported some medial and posterior knee pain, but no "locking, catching, or popping," and normal gait. R. at 887. An exam on March 6, 2018 also reported knee pain, but normal gait, no need for an assistive device, and a full range of motion. R. at 886.

Regarding the intensity, persistence, and limiting effects of Plaintiff's right eye retina disorder, Plaintiff has corrected 20/40 vision in his right eye with pinhole blurriness. R. at 840, 844, 848. On November 30, 2017, Dr. Blake A. Cooper, M.D., diagnosed Plaintiff with nuclear sclerosis and chronic central serous chorioretinopathy. R. at 841. Dr. Cooper noted that Plaintiff

---

[3] Plaintiff testified that he also has arthritis in his elbow and shoulder. R. at 205. However, in formulating the RFC, the ALJ only referred to Plaintiff's allegations of knee arthritis. R. at 21–26. Plaintiff does not object to the ALJ's failure to consider his allegations of arthritis in his elbow and shoulder.

[4] The March 29, 2015 MRI also showed a potential partial radial tear at the root of the posterior horn of the medial meniscus. R. at 523. Plaintiff elected to treat this injury nonoperatively. R. at 887. An MRI performed in early 2018 showed that this injury had partially healed. R. at 886.

7

presented with trace fluid under his retina. *Id.* This fluid was sometimes present and sometimes absent during Plaintiff's previous visits to Dr. Cooper, and Dr. Cooper noted that the fluid resolves on its own 50% of the time. *Id.* Plaintiff has corrected 20/20 vision in his left eye and is able to drive during the daytime. R. at 202, 840, 844, 848.

Regarding the intensity, persistence, and limiting effects of Plaintiff's degenerative disc disease and residual effects of his 2011 stroke, an MRI of Plaintiff's brain and spine on February 2, 2017, was "unremarkable other than a right sided disc protrusion at C5/C6." R. at 616. Despite the protrusion, Plaintiff reported no symptoms on his right side. *Id.* In addition, Dr. John W. Gianino, M.D., examined Plaintiff on February 22, 2017, and noted that he did not believe Plaintiff required neurosurgical intervention. *Id.* Dr. David L. Ewing, M.D., examined Plaintiff on June 30, 2017, and concluded that Plaintiff's brain stem stroke syndrome had "essentially resolved completely." R. at 642.

Regarding the intensity, persistence, and limiting effects of Plaintiff's sleep apnea, Dr. Goddard noted on June 30, 2017, that Plaintiff was using CPAP and "seem[ed] to be making good progress." R. at 643. In addition, Plaintiff testified that his current BIPAP treatment helps his sleep apnea. R. at 204. *See Johnson*, 240 F.3d at 1148.

Finally, there is no merit to Plaintiff's claim that the ALJ failed to fully and fairly develop the record with respect to Plaintiff's anxiety disorder. Pl.'s Br. 24–26. Plaintiff argues that Dr. Morgan's opinions do not constitute substantial evidence to support the ALJ's decision, and therefore the ALJ had a duty to "obtain an opinion from a treating or examining physician as to [Plaintiff's] functional limitations stemming from his anxiety disorder." *Id.* at 25. However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Where the medical record is adequately developed,

an ALJ is not required to seek an additional medical opinion. *Id.* In this case, the medical record was adequately developed as to Plaintiff's anxiety disorder: it contained reports from six separate visits to Dr. Ewing wherein Dr. Ewing discussed Plaintiff's anxiety disorder, prescribed Celexa, and attempted—without success—to get Plaintiff to see a psychiatrist. R. at 577, 590, 625, 635–38, 640–43, 652–56. Because "medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings," the ALJ had no duty to obtain any additional medical opinions. *Hensley*, 829 F.3d at 932 (citation omitted).

## II. The ALJ did not err in relying on the RFC at step five.

Finally, Plaintiff contends that because the RFC is flawed, so is the hypothetical he posed to the vocational expert. Because the Court finds no error in the RFC, there was no error in the hypothetical posed to the vocational expert whose answer is the basis for the ALJ's determination that Plaintiff can perform other occupations in the national economy.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  May 13, 2021                   /s/ Greg Kays                         
                                      GREG KAYS, JUDGE
                                      UNITED STATES DISTRICT COURT